**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

DORIS LUJAN a/k/a DORIS FELIX-LUJAN,
on her own behalf and on behalf of her minor
daughters, R.L. and D.L.

       Plaintiffs,

v.                                      No. 8-CV-1125 WJ/DJS

COUNTY OF BERNALILLO, ANTHONY
E. MEDRANO, Deputy Sheriff, B. TYLER,
Deputy Sheriff Sergeant, RYAN NELSON,
Deputy Sheriff, THERESA SABAUGH,
Deputy Sheriff, individually and in their
official capacities, and APPROXIMATELY
EIGHT UNIDENTIFIED MEMBERS OF
THE BERNALILLO COUNTY SHERIFF'S
DEPARTMENT SWAT TEAM.

       Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND ORDERING PLAINTIFFS' COUNSEL TO SHOW
CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED**


THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment

(Doc. 34).  Plaintiff Doris Lujan filed this suit after police searched her residence for drugs

pursuant to a valid search warrant.  On behalf of herself and her two teenage daughters who were

present, Plaintiff Lujan alleges various Fourth Amendment violations under 42 U.S.C. § 1983

and a claim of malicious prosecution under the New Mexico Tort Claims Act.  Because

Plaintiffs have not put forth sufficient evidence to maintain any of their claims, this Court

GRANTS Defendants Motion for Summary Judgment in its entirety.

Furthermore, Plaintiffs' counsel filed suit on behalf of these same Plaintiffs in the District of New Mexico a year ago in a case arising out of a different (but eerily similar) search by police.  In that case, the district judge granted summary judgment to the defendants due to the serious legal omissions and errors by Plaintiffs' counsel.  On appeal, the Tenth Circuit affirmed. Because Plaintiffs' counsel's arguments in this case are identical to those contained in his earlier case, this Court ORDERS Plaintiffs' counsel to SHOW CAUSE why he should not be sanctioned for needless and vexatiously multiplying the proceedings in this case.

## BACKGROUND[1]

Defendant Anthony Medrano, a Detective with the Bernalillo County Sheriff's Office, received information from a confidential informant that Plaintiff Doris Lujan was selling crack cocaine from her residence.  Based on this information, Defendant Medrano set up two controlled buys with the confidential informant.  On both occasions, Defendant Medrano met the confidential informant at a pre-arranged location, searched him for narcotics, provided the informant with official funds, and sent him to Lujan's resident to conduct the controlled purchase.  Police conducted surveillance to ensure that the informant proceeded directly to Lujan's resident and back again without meeting any other person.  On both occasions, the confidential informant returned with a quantity of cocaine, stating he had bought it from Lujan.

Based on this information, as well as Lujan's previous arrests for narcotics distribution, Defendant Medrano requested a warrant to search Lujan's residence.  A New Mexico state court

---

[1] These facts are taken primarily from the Defendants' Statement of Facts.  Plaintiffs purport to dispute some of these facts in their Response, but do not include any citation to the record or other evidence.  Accordingly, because Plaintiffs have not specifically controverted these facts as required by the local rules, these facts are deemed admitted.  D.N.M.LR-Civ. 56.1.(b) ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.").

judge issued a warrant on July 25, 2007 which authorized police to search Lujan's residence and

Lujan herself.  On the morning of August 2, 2007, members of the Bernalillo County Sheriff's

Department executed the search warrant.  The SWAT team entered first by breaking down the

doors and several windows.  They forced Lujan and her two teenage daughters to the floor,

handcuffed them, and searched them.  Because Lujan and her oldest daughter were acting

suspiciously, two female members of the SWAT team took them into a back room and visually

strip searched them.  When the SWAT team was finished securing the residence, they alerted the

narcotics team members who were waiting down the street.  The narcotics team entered as the

SWAT team exited.

        While searching Lujan's home, the narcotics detectives found two prescription bottles,

each issued to a male who did not reside at the home.  They did not find any other contraband.

At some point during the search, Defendant Medrano received a call informing him that officers

searching the home of Lujan's mother (a simultaneous search warrant had been executed at

Lujan's mother's house) found over 30 grams of crack cocaine in Lujan's mother's vagina.  As a

result, Medrano directed Defendant Sabaugh, a female Detective with the narcotics team, to strip

search Lujan.  Sabaugh did so, not realizing that the SWAT team had already conducted a strip

search of Lujan.  Later, Lujan complained that the handcuffs were too tight and Defendant

Medrano switched them from plastic to metal handcuffs, which are more comfortable.  The

officers subsequently arrested Lujan and brought her to the station.  Because the officers had no

place to take Lujan's two daughters, they brought them to the same station where their mother

was taken and placed them in a cell by themselves and next to Lujan for safekeeping.

Meanwhile, Medrano had placed a call to New Mexico's Children, Youth and Families

Department to get assistance in placing the girls somewhere.  The two daughters, however, were

able to call a family friend who came to get them and with whom they stayed until their mother was released.

A grand jury subsequently indicted Lujan and she and pled no contest to two counts of possession of a controlled substance. Lujan and her two daughters then filed this suit against various members of the Bernalillo County Sheriff's Department, in their individual and official capacities, alleging: (1) an unreasonable search and excessive use of force against the property; (2) failure to adequately supervise and care for the seized property; (3) unreasonable seizure and detention of the Plaintiffs; (4) excessive use of force against the Plaintiffs; (5) supervisory liability against Defendant Sergeant Tyler; (6) municipal liability against the County of Bernalillo; (7) malicious prosecution under the New Mexico Tort Claims Act; and (8) a claim for punitive damages. Defendants deny these charges and assert a defense of qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252.

4

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendants qualified immunity. *Id.* Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

## DISCUSSION

### A.    Dismissal of Various Defendants

First, this Court will dismiss from this case the eight unidentified SWAT team members that Plaintiffs purport to sue. Discovery in this case closed on February 9, 2010. Plaintiffs have had ample opportunity to discovery the identities of and serve as defendants the SWAT team members who entered Plaintiffs' home and conducted the initial strip searches. In fact, defense counsel identified all the SWAT team members in a letter to Plaintiffs' counsel in August 2008—long before the filing of the Complaint in the instant case. As it turns out, Plaintiffs filed a nearly identical suit stemming from a previous search of their residence by the Bernalillo County Sheriff's Department in 2006. In that suit, Plaintiffs also named as defendants "approximately eight unidentified members" of the Bernalillo County Sheriff's Department SWAT team. The district court dismissed the claims against those defendants, noting that Plaintiffs' counsel had been provided with "ample time to name and serve them" during the course of discovery, but had not done so. *Lujan, et al. v. County of Bernalillo, et al.*, 354 Fed. Appx. 322, at*2 (10th Cir. 2009) (unpublished) (quoting district court decision and affirming

5

district court's grant of summary judgment in favor of defendants).  In other words, Plaintiffs'

counsel has known the identities of these SWAT team officers for over two years, but has not

bothered to name or serve them in this case.  Accordingly, this Court dismisses these defendants

from the suit.  *See Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996) (observing that dismissal

may be appropriate when unnamed defendants remain unidentified for a lengthy period of time);

*Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (stating that dismissal is proper where

plaintiff failed to identify and serve unnamed defendant before close of discovery).

Second, Plaintiffs purport to name "Deputy Sheriff Ryan Nelson" of the Bernalillo

County Sheriff's Office as a Defendant in this case.  Defendant Nelson was the Detective who

assisted Medrano in carrying out the first controlled purchase of narcotics from Lujan by the

confidential informant.  However, Nelson was employed by the Albuquerque Police Department,

not the County of Bernalillo.  More importantly, Nelson was never served in this case and

therefore cannot be maintained as a Defendant.  Accordingly, this Court dismisses Defendant

Nelson from this suit.

After dismissing those Defendants from this suit, this Court is left with four Defendants:

the County of Bernalillo, Anthony Medrano, Theresa Sabaugh, and Sergeant Tyler, who are each

named in their individual and their official capacities.[2]

**B.      Individual Liability of Officers Under § 1983**

Plaintiffs allege that the individual officers—Medrano, Sabaugh and Tyler—are

---

[2] The first Defendant named in Plaintiffs' Complaint is the "County of Bernalillo, Bernalillo County Sheriff's Office."  To the extent that Plaintiffs are suing the Bernalillo County Sheriff's Office, that entity must be dismissed because "governmental sub-units are not properly suable entities in § 1983 actions."  *See Lujan*, 354 Fed. Appx. at *2; *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985).

individually liable under § 1983 for various constitutional violations.  In order to maintain §
1983 actions against these individual officers, Plaintiffs must produce evidence that each
Defendant personally participated in the alleged constitutional violation.  *See Mitchell v.
Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (holding that a defendant cannot be held liable in
a § 1983 action unless he or she caused or personally participated in the alleged constitutional
violation); *see also Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57
(10th Cir. 2001) (requiring a § 1983 complaint to allege "an affirmative link between the
defendant's conduct and any constitutional violation").  It appears that Plaintiffs have alleged
four separate Fourth Amendment violations against the individual officers.  The Court will
address each violation in turn.

     <u>Excessive Force Against Property & Failure to Secure Property</u>.  In Counts I and II of
their Complaint, Plaintiffs claim that the Defendant officers: (1) used excessive force against the
property (or, as Plaintiffs put it, engaged in "wanton destruction of portions of the residence");
and (2) failed to adequately supervise and care for the seized property.  The problem with both
of these claims is that none of the named officers were present when these alleged constitutional
violations occurred.  It is undisputed that the three named officers were all part of the narcotics
team.  It is similarly undisputed that none of these officers entered the Lujans' residence until
*after* the SWAT team had broken into the house and secured it.  In fact, Plaintiffs have put forth
no evidence that these individual defendants caused any harm to Plaintiffs' property whatsoever.
Plaintiffs object only to the SWAT teams' use of "unnecessarily destructive and brutal means" to
enter the residence—including "br[eaking] two windows and double doors, br[eaking] an
entrance wall and entry fence and fir[ing] weapons and/or explosive devices."  Because the
SWAT team members are not Defendants in this case and because Plaintiffs have put forth no

7

evidence of property destruction by Medrano, Sabaugh or Tyler, Plaintiffs cannot prevail on this claim.  Likewise, the only evidence Plaintiffs offer in support of their claim that the Defendants failed to adequately secure the property is an allegation in their Complaint that the Defendants left the residence unlocked.  Complaint, at 10.  Plaintiffs have not identified *which* Defendant left the door unlocked nor have they provided any evidence suggesting that Medrano, Sabaugh or Tyler were responsible for leaving the door unlocked.  Because Plaintiffs have no evidence linking these Defendants to the purported constitutional violation, the Court enters summary judgment in favor of the individual officers on Counts I and II.

      <u>Unreasonable Seizure & Detention</u>.  In Count III, Plaintiffs allege that the individual officers unreasonably seized and detained them.  Again, however, it is undisputed that the SWAT team officers initially detained and handcuffed the Plaintiffs.  The individual Defendants named here merely *continued* the detention of Plaintiffs by declining to release them from their handcuffs.  In any case, police clearly have the authority to detain the occupants of a residence while they are conducting a lawful search.  *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) ("[F]or Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."); *Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.") (internal quotations omitted).

      The only other detention of Plaintiffs occurred when Defendant Medrano took R.L. and D.L. to the station and placed them in a cell until a family member or social services could

collect them from the station.[3]  Because the two girls were minors, Medrano could not leave

them at their home alone and there were no family members present to take them.  *See, e.g.*,

*Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (leaving open the possibility

that abandonment of a minor by a police officer could constitute a violation of the minor's

constitutional liberty interest in personal security); *Moore v. Marketplace Restaurant, Inc.*, 754

F.2d 1336, 1355 (7th Cir. 1985) (noting that abandoning a minor after arresting the minor's

parents constitutes an "exercise of extremely poor judgment").  In addition, Medrano testified

that no law enforcement officers at the station were available to supervise them.  While they

were at the station, the girls were allowed to call family members and friends until they found

someone to come get them.  Meanwhile, Medrano attempted to contact New Mexico's Children,

Youth and Families Department.  At no point did Medrano deny the girls water, food or a

bathroom break.  *See* Lujan's Depo, Defendants' Exhibit 6, at 133-34.  Plaintiffs do not claim

that they suffered any physical injury as a result of the detention.  Even if this Court were to

consider this detention a "seizure" in violation of the Fourth Amendment, it is certainly not

clearly established law that an officer cannot detain two minor children in an effort to safeguard

them until he can release them to a family member or social services.  Accordingly, the

individual Defendants (particularly Defendant Medrano, who is the only Defendant to whom this

specific detention claim applies) are entitled to qualified immunity on Count III.

> <u>Excessive Force</u>.  Count IV alleges that Defendants used excessive force against the

Plaintiffs.  This claim appears to encompass both the "excessively tight handcuffs" as well as the

---

[3] While the length of detention is an important factor in determining whether a
constitutional violation occurred, neither party bothered to state how long the girls were kept at
the police station.

strip searches.  Complaint, at 12.  As far as the "excessively tight" handcuffs are concerned, the

SWAT team members—not these Defendants—initially applied the handcuffs.  Neither

Medrano, Sabaugh or Tyler actually applied handcuffs to any of the Plaintiffs.  In fact, the

undisputed facts show that when the Plaintiffs complained later about their handcuffs being too

tight, Medrano switched them from plastic handcuffs to metal handcuffs, which are more

comfortable.  Lujan's Depo, Defendant's Exhibit 6, at 134.  Therefore, Plaintiffs simply have no

evidence suggesting that any of these individual defendants applied excessively tight handcuffs

to them.  As far as the strip searches are concerned, only Defendant Sabaugh strip searched any

of the Plaintiffs—and the evidence shows that she only strip searched Lujan herself.[4]

Furthermore, Defendant Sabaugh strip searched Lujan only after officers reported finding

cocaine in Lujan's mother's vagina.  Given that Lujan was suspected of harboring and selling

drugs, it was reasonable for Defendant Medrano to order Defendant Sabaugh to strip search

Lujan.  A strip search is permissible when there is reason to suspect that the person is harboring

drugs or contraband.  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Accordingly, this Court grants

summary judgment to Defendants on the allegations in Count IV.

    <u>Supervisory Liability</u>.  Count VI alleges a supervisory liability claim against Defendant

Sergeant Taylor.  Specifically, Plaintiffs allege that Defendant Taylor, the supervising officer

---

[4] Both Lujan and her eldest daughter were initially strip searched by female officers from
the SWAT team who are no longer Defendants in this action.  The undisputed facts show that
Deputies Dudewicz and Hopkins from the SWAT team searched all three Plaintiffs and then
strip searched Lujan and her eldest daughter due to their suspicious actions.  *See* Defendant's
Motion, at 7.  Both Lujan and her daughter describe the officers who strip searched them as
wearing tan uniforms and both testified that one of the officers had black, short spiky hair.  *See*
Lujan's Depo, Defendant's Exhibit 5, at 108.  That description matches the two female SWAT
team officers who were both wearing tan uniforms and one of whom has short, spiky black hair.
Defendant Sabaugh, on the other hand, was not wearing a uniform and has long blonde hair.

over the narcotics team, "permitted the other defendant officers under his command to . . .

conduct illegal personal searches, including cavity searches, [and] to illegally harass and

subjugate the Plaintiffs."  Complaint, at 13.  The first problem with this claim is that supervisory

liability is not permitted under § 1983.  Rather, Plaintiffs must show that "the defendant-

supervisor personally directed the [constitutional] violation or had actual knowledge of the

violation and acquiesced in its continuance."  *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.

1996).  The second problem with this claim is that this Court has determined that none of the

Defendant officers committed any constitutional violations.  Accordingly, Defendant Taylor

cannot be liable for personally directing any constitutional violations because no constitutional

violations occurred.  Finally, the Court notes that Defendant Taylor, like the other Defendants,

was not present when the SWAT team made their initial entry, nor was he present at the station

when Defendant Medrano detained Lujan's two minor daughters.  Even if this Court were to

determine that a constitutional violation occurred somewhere along the line, it would be difficult

for Defendant Taylor to personally direct the actions of the other officers when he was not

physically present.  For these reasons, the Court enters summary judgment in favor of Defendant

Taylor on Plaintiff's supervisory liability claim.  Accordingly, this Court finds that none of the

Defendant officers are individually liable for any of the constitutional violations alleged by

Plaintiffs.

## C.     Municipal Liability Under § 1983

Plaintiffs next allege that the County of Bernalillo is liable under § 1983 because the

allegedly unconstitutional acts of its employees were perpetrated pursuant to an official policy or

custom of the County of Bernalillo.  Complaint, at 15 (Count VII).  Plaintiffs also allege that

each of the Defendant officers is liable in his or her official capacity—a claim which is

duplicative of the municipal liability claim.  In order to make out either claim, Plaintiffs must

show that: (1) a constitutional violation occurred; and (2) that a County policy or custom was the

moving force behind the violation.  *See Myers v. Oklahoma County Board of County Comm'rs*,

151 F.3d 1313, 1320 (10th Cir. 1998).  First, as discussed above, no constitutional violation

occurred; therefore, the County of Bernalillo cannot be liable.  *See Hinton v. City of Elwood*, 997

F.2d 774, 782 (10th Cir. 1993) ("It is inconceivable to hold the municipality liable if its officers

inflict no constitutional harm, regardless of whether the municipality's policies might have

'authorized' such harm.") (quotation omitted).  Second, Plaintiffs have put forward no evidence

that the County of Bernalillo had any policy or custom in place which permitted unconstitutional

actions by its officer-employees.  *Lujan, et al. v. County of Bernalillo, et al.*, 354 Fed. Appx.

322, at*2 (10th Cir. 2009) ("With respect to the claim against the County, the primary deficiency

is a legal one. . . .  We have no evidence before us suggesting that the conduct Ms. Lujan alleged

represented the execution of an official policy rather than gross deviations from such policy.").

Accordingly, this Court enters summary judgment in favor of the County of Bernalillo as well as

the Defendant officers sued in their official capacities.

**D.       New Mexico Tort Claims Act**

Plaintiffs have only one claim left: their state tort claim of malicious prosecution which

they are bringing pursuant to the New Mexico Tort Claims Act.  Complaint, at 12 (Count V).

Specifically, Plaintiffs claim that the individual Defendant officers maliciously sought to

prosecute Lujan in spite of the lack of any evidence of wrongdoing.  *Id.*  In order to establish

malicious prosecution, a plaintiff must demonstrate: (1) that the defendant initiated a judicial

proceeding against the plaintiff; (2) that the defendant committed some act in the use of process

which would not be proper in the regular prosecution of the claim; (3) that a primary motive of

the defendant in misusing the process was to accomplish an illegitimate end; and (4) damages.

*Devaney v. Thriftway Marketing Corp.*, 953 P.2d 277 (N.M. 1997).  While the defendants

certainly initiated a criminal proceeding against Lujan, Plaintiffs have presented no evidence that

Defendants misused the judicial process or that Defendants' purpose was to accomplish an

illegal end.  Plaintiffs do not dispute that the Defendants uncovered two prescription bottles in

Lujan's house, nor do they dispute that Lujan pled no contest to two counts of possession of a

controlled substance.  Because Plaintiffs have failed to present any evidence of malicious

prosecution, the Court enters summary judgment in favor of Defendants on this claim.

**E.     Order to Show Cause**

        In responding to Defendants' Motion for Summary Judgment, Plaintiffs' counsel have

failed to make a single cogent legal argument or put forth an iota of evidence to support of their

clients' claims.  On its own, this would constitute serious cause for concern.  However, the Court

believes the actions by Plaintiffs' counsel rise to the level of sanctionable conduct when the

Court considers the fact that another judge identified almost every single legal error repeated

here more than a year ago.

        Some background is necessary.  Apparently, the Plaintiffs and Defendants in this case are

no strangers to litigation in this district.  From 2003 to 2007, the Bernalillo County Sheriff's

Office executed three separate search warrants on Lujan's property to look for drugs.  The

second of these searches occurred in 2006 under circumstances almost identical to those here.  In

the 2006 search, Detective Medrano signed the affidavit supporting the search warrant.  On the

day the warrant was executed, a SWAT team initially entered the residence by force, forced

Lujan and her two daughters to the ground, handcuffed them and strip searched them.  The

narcotics team, led by Detective Medrano, did not participate in any of these initial events, but

entered afterwards and searched the residence.  The 2006 and 2007 searches differ only in the factual details.  For example, besides Detective Medrano, the 2006 search involved different individual officers.  Furthermore, Lujan's two minor children were apparently not taken to the station following the 2006 search (or, if they were, Plaintiffs did not allege any claim arising from that action).  Finally, in 2006, officers discovered a substance during the search that field-tested positive for methamphetamine.  Lujan was charged with trafficking in methamphetamine, but the case was *nolle prosequied* after lab results determined that the substance was actually camphor (which is not illegal).

Following the 2006 search, Plaintiffs, through their counsel, filed suit against the County of Bernalillo, various named officers and eight unidentified members of the SWAT team.  That complaint is *identical* to the complaint here—except for the factual details identified above.  It alleged identical Fourth Amendment violations (Count I: unreasonable search and excessive use of force against property; Count II: failure to adequately supervise and care for seized property; Count III: unreasonable seizure and detention; Count IV: excessive use of force), a claim of malicious prosecution under the New Mexico Tort Claims Act, and a claim of municipal liability against the County of Bernalillo.  In April 2009, Circuit Judge Paul Kelly, sitting by designation on the District of New Mexico, entered summary judgment for the Defendants.  *Lujan, et al. v. County of Bernalillo, et al.*, 6:07-CV-1035 (D.N.M. April 3, 2009).  In his opinion, Judge Kelly noted the following deficiencies—*all* of which are also present in the instant case:

- In responding to and purportedly disputing Defendants' Statement of Facts, Plaintiffs' counsel failed to properly cite to any evidence in the record.  Accordingly, Defendants' facts were deemed undisputed.  *Id.* at 6 ("First, though the complaint contains plentiful facts that might controvert some of the Defendants' undisputed facts, Plaintiff cannot rely

14

upon the allegations contained in the complaint to demonstrate a material factual dispute.
Second, Plaintiff is required to specifically reference to deposition testimony that
demonstrates a material factual dispute, i.e., by page number.")

- Plaintiffs' counsel failed to name and serve the unidentified SWAT team members.
  Accordingly, Judge Kelly dismissed those Defendants from the suit. *Id.* at 11 ("Given
  that much of what Plaintiff objects to in this encounter occurred at the hands of the
  SWAT team, it is passing strange that no action was taken to add these persons. Despite
  ample time to name and serve them, Plaintiff has not, and dismissal is thus warranted.")

- Plaintiffs' counsel improperly named the Bernalillo County Sheriff's Department as a
  Defendant. *Id.* at 13 ("Because governmental sub-units are not properly suable entities in
  § 1983 actions, such dismissal is appropriate.")

- Plaintiffs' counsel failed to put forth evidence linking specific named Defendants to the
  alleged constitutional violations. *Id.* at 9-11 ("Without question, though, § 1983 requires
  some causal connection between the alleged deprivation of constitutional rights and a
  particular Defendant's actions. . . . Plaintiff has *some* responsibility . . . to develop the
  facts indicating personal liability and articulate legal theories. . . . Here, because Plaintiff
  has failed on this score, Defendants are entitled to summary judgment and qualified
  immunity on the constitutional claims.")

- Plaintiffs' counsel failed to put forth any evidence supporting Count II—failure to
  adequately supervise and care for the seized property. *Id.* at 12.

- Plaintiffs' counsel failed to put forth any evidence supporting Count VI—municipal
  liability. Specifically, Plaintiffs' counsel failed to put forth any evidence suggesting that
  the County of Bernalillo had a municipal policy or custom which caused the

constitutional violation.  *Id.* at 13 ("Plaintiff has not met her burden because she has not gone beyond the allegations in her complaint to show the existence of any such policy or custom.")

The Tenth Circuit affirmed Judge Kelly on all counts.  *Lujan, et al. v. County of Bernalillo, et al.*, 354 Fed. Appx. 322, at*3 (10th Cir. 2009) ("[W]e affirm for substantially the reasons given by the district court in its opinion.")

Amazingly, Plaintiffs' counsel has repeated each and every one of these legal and factual deficiencies in the present case.  Either Plaintiffs' counsel did not bother to read Judge Kelly's earlier opinion (or the Tenth Circuit case affirming that opinion) or Plaintiffs' counsel has decided to ignore it.  In either case, the conduct of Plaintiffs' counsel is inexcusable and suggests to the Court one of two scenarios.  First, the individual Plaintiffs may have legitimate claims against Defendants, in which case their counsels' inept handling of this case has cost them their day in court.  Second, Plaintiffs' claims may have no merit and this case is simply a way to harass the Defendants.

Attorneys Dennis Montoya and Judith Rosenstein have served as Plaintiffs' counsel in both this case and the earlier case before Judge Kelly.  Various judges in this District (including the undersigned) have sanctioned Dennis Montoya for unprofessional behavior multiple times in the past—often for conduct identical to his conduct here.  *See, e.g.*, *Holguin, et al. v. Burge, et al.,* 5-CV-628, Doc. 35 (D.N.M. Jan. 20, 2006) (dismissing claims as a sanction for Montoya's misconduct); *Hughes v. Martinez*, 9-CV-104 (issuing order to show cause why Montoya should not be sanctioned); *Sizemore v. State of New Mexico*, 4-CV-272 (awarding attorney's fees under § 1927 as a sanction against Montoya).  As my colleague on this Court has noted, Mr. Montoya's unprofessional conduct appears to be "part of a deliberate pattern that reflects a high degree of

16

culpability." *See Holguin, et al. v. Burge, et al.,* 5-CV-628, Doc. 30, at 26 (D.N.M. Jan. 20, 2006). In his opinion granting summary judgment to Defendants, Judge Kelly found it "remarkabl[e]" that "Plaintiff's response to Defendants' motion for summary judgment contains no legal argument." *Lujan, et al. v. County of Bernalillo, et al.*, 6:07-CV-1035, at 7 (D.N.M. April 3, 2009). If Judge Kelly sat by designation in the District of New Mexico more often, perhaps he would have found Mr. Montoya's behavior characteristic, rather than remarkable.

While Ms. Rothenstein does not share Mr. Montoya's long and dubious record of attorney sanctions, Ms. Rothenstein is an attorney of record for Plaintiffs and her name appears routinely on pleadings in this case. Consequently, she is equally culpable for her role in refiling an identical complaint without bothering to correct any of the legal or factual errors identified by Judge Kelly and the Tenth Circuit a year ago. Accordingly, this Court orders Plaintiffs' counsel to show cause why they should not be sanctioned under either § 1927 or this Court's inherent authority for their conduct in this case. Defense counsel is hereby ordered to submit a Response to this order within ten (10) days which states Defendants' position on the issue of sanctions and sets forth any additional evidence of or argument concerning sanctionable conduct by Plaintiffs' counsel in this case. Plaintiffs' counsel must then respond to both this Court's order and any additional argument submitted by Defendants within ten (10) days of Defendants' submission. This Court will review the submissions by all counsel and then determine whether additional proceedings are warranted.

## CONCLUSION

Because Plaintiffs have failed to present sufficient evidence of wrongdoing on the part of the Defendants, this Court GRANTS Defendants' Motion for Summary Judgment in its entirety. In addition, Plaintiffs' pending Motion for Summary Judgment as to Minor Children (Doc. 34) is

rendered MOOT by this order.  As detailed above, this Court ORDERS Plaintiffs' counsel to SHOW CAUSE why they should not be sanctioned for their conduct in this case.  Defense counsel has TEN (10) DAYS from the date of this order to submit any additional evidence or argument concerning sanctions.  Plaintiffs counsel have TEN (10) DAYS from the date of Defendants' submission to file their response to this Court's Order to Show Cause as well as their response to any additional material submitted by defense counsel.  Finally, while granting Defendants' Motion for Summary Judgment would normally dispose of this case in its entirety, the Court shall retain jurisdiction on matters related to the Order to Show Cause.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE