# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DORIS LUJAN a/k/a DORIS FELIX-LUJAN,
on her own behalf and on behalf of her minor
daughters, R.L. and D.L.

     Plaintiffs,

v.                                                                                                      No. 8-CV-1125 WJ/DJS

COUNTY OF BERNALILLO, ANTHONY
E. MEDRANO, Deputy Sheriff, B. TYLER,
Deputy Sheriff Sergeant, RYAN NELSON,
Deputy Sheriff, THERESA SABAUGH,
Deputy Sheriff, individually and in their
official capacities, and APPROXIMATELY
EIGHT UNIDENTIFIED MEMBERS OF
THE BERNALILLO COUNTY SHERIFF'S
DEPARTMENT SWAT TEAM.

     Defendants.

## MEMORANDUM OPINION AND ORDER ON THE COURT'S ORDER TO SHOW CAUSE AS TO ATTORNEY DENNIS MONTOYA

THIS MATTER proceeded pursuant to this Court's Order to Show Cause ("OSC") (Doc. 44), filed June 7, 2010. On August 18, 2010, this Court held a hearing to determine whether to impose sanctions on Attorney Judith Rosenstein and Attorney Dennis Montoya who served as Plaintiffs' counsel in this case. After reviewing the pleadings filed by Montoya and Rosenstein in response to the OSC, after considering the testimony of the sole witness, Judith Rosenstein, and after listening to the arguments presented at the hearing, this Court dismissed the OSC with regard to Judith Rosenstein (Doc. 71), and now makes the following findings with regard to Dennis Montoya.

## BACKGROUND[1]

Plaintiff Doris Lujan filed this suit (which will I refer to throughout this order as *Lujan II*) after members of the Bernalillo County Sheriff's Department searched her residence for drugs pursuant to a valid search warrant in 2007. On behalf of herself and her two teenage daughters who were present, Plaintiff Lujan alleged various Fourth Amendment violations under 42 U.S.C. § 1983 as well as a claim for malicious prosecution under the New Mexico Tort Claims Act. On June 7, 2010, this Court granted summary judgment in favor of the Defendants on all Plaintiffs' claims for two primary reasons. First, the Plaintiffs failed to name and serve the proper defendants. Second, for the surviving Defendants, the Plaintiffs failed to put forth sufficient evidence to sustain their claims.

Order to Show Cause. In that same order, the Court required Plaintiffs' counsel to show cause why the Court should not impose sanctions for Plaintiffs' counsel's performance (or lack thereof) in the case. The Court noted that Plaintiffs' counsel had filed suit on behalf of these same Plaintiffs in the District of New Mexico a year earlier in a case arising out of a different, but factually similar, search by police of the same residence (which I will refer to as *Lujan I*). Except for some varying factual details, the complaints filed in *Lujan I* and *Lujan II* are identical. Both complaints set forth the same claims (Count I: unreasonable search and excessive use of force against property; Count II: failure to adequately supervise and care for seized property; Count III: unreasonable search, seizure and detention; Count IV: excessive use of force; Count V: malicious prosecution; Count VII: municipal liability against the County of

---

[1] A detailed account of the facts in this case are set forth in this Court's Memorandum Order and Opinion Granting Defendants' Motion for Summary Judgment and Ordering Plaintiffs' Counsel to Show Cause Why Sanctions Should Not Be Imposed (Doc. 44), filed June 7, 2010.

Bernalillo; Count VIII: punitive damages).[2] In *Lujan I*, Tenth Circuit Judge Paul Kelly, sitting by designation on the District Court of New Mexico, granted summary judgment to the defendants due to the serious legal omissions and errors by Plaintiffs' counsel. *Lujan v. County of Bernalillo* (*Lujan I*), 6:07-CV-1035 (D.N.M. Apr. 3, 2009) (Doc. 47). Judge Kelly identified each error and explained why summary judgment was proper as to each claim. On appeal, the Tenth Circuit affirmed. *Lujan ex rel. Lujan v. County of Bernalillo*, 354 Fed. App'x 322 (10th Cir. 2009).

In the instant case, Plaintiffs' counsel repeated almost every single legal error identified by Judge Kelly in *Lujan I*. In my earlier opinion granting summary judgment, I listed each legal error and omission which Plaintiffs' counsel had repeated:

• Plaintiffs' counsel failed to name and serve the unidentified SWAT team members, despite having ample opportunity to discovery their identities. Accordingly, these defendants were dismissed from the case in both *Lujan I* and *Lujan II*.

• Plaintiffs' counsel improperly named the Bernalillo County Sheriff's Department as a Defendant under § 1983 in both *Lujan I* and *Lujan II*.

• In responding to and purportedly disputing Defendants' Statement of Facts in the Motion for Summary Judgment, Plaintiffs' counsel failed to properly cite to relevant evidence in the record. Accordingly, Defendants' facts were deemed undisputed in both *Lujan I* and *Lujan II*.

• Plaintiffs' counsel failed to put forth any evidence supporting Count II—failure to

---

[2] The complaint in *Lujan II* also contained a claim of supervisory liability against Defendant Tyler for failure to supervise the other Defendant officers (Count VI). This Court granted summary judgment on this claim because supervisory liability is not permitted under § 1983 and because Plaintiffs had not shown that any constitutional violation occurred in the first place.

3

> adequately supervise and care for the seized property. Accordingly, Count II was dismissed in both *Lujan I* and *Lujan II*.

- Plaintiffs' counsel failed to put forth any evidence supporting Count VI—municipal liability. Accordingly, Count VI was dismissed in both *Lujan I* and *Lujan II*.
- Plaintiffs' counsel failed to put forth any evidence linking specific named Defendants to the alleged constitutional violations. Accordingly, summary judgment was granted in Defendants' favor in both *Lujan I* and *Lujan II*.

As I noted in my opinion granting summary judgment: "Amazingly, Plaintiffs' counsel has repeated each and every one of these legal and factual deficiencies in the present case. Either Plaintiffs' counsel did not bother to read Judge Kelly's earlier opinion (or the Tenth Circuit case affirming that opinion) or Plaintiffs' counsel has decided to ignore it." Doc. 44, at 16. I further opined that the Plaintiffs may have had legitimate claims and that Plaintiffs' counsels inept handling of the case had cost their clients their day in court. *Id.*

While the actions of the Defendants may very well have been lawful and proper, there are allegations in the Complaint (Doc. 1) concerning the two female juvenile Plaintiffs, ages 16 and 12 at the time of the alleged incident, that deserve some attention. Specifically, the Complaint alleges that the two female juvenile plaintiffs were individually subjected to a strip and body cavity search by a female law enforcement officer and that the two female juvenile plaintiffs were placed in tight handcuffs for up to seven hours without the opportunity for the females to use the bathroom, drink, or eat. Compl. ¶¶ 22-25 (Doc. 1). It should be noted that while Defendants in their Answer (Doc. 6) admit that a search of Plaintiffs' residence occurred, Defendants deny the more sensational allegations concerning the juvenile females. Nevertheless, allegations of the type made in the Complaint, especially those pertaining to minor children,

receive judicial scrutiny and would have received close judiciary scrutiny in this case but for the failure of Attorney Montoya to adequately and competently represent his clients.

Hearing on Order to Show Cause. On August 18, 2010, this Court held a hearing on the OSC. Attorney Rosenstein took the stand, at the Court's request, and reaffirmed the detailed testimony she had submitted by way of affidavit. In her affidavit (Docs. 55 & 56), Rosenstein made the following representations:

- Rosenstein became acquainted with Plaintiff Doris Lujan in 2006 when Lujan was arrested on drug trafficking charges. Ms. Rosenstein defended Lujan in that prosecution. When Lujan decided to pursue a civil case arising out of her 2006 arrest (*Lujan I*), she asked Rosenstein to represent her. Because Rosenstein had little experience with civil cases—and *no* experience with civil rights cases—she agreed to take the case only if she could associate with another counsel and act as second chair. Rosenstein decided to associate with Mr. Montoya because of his experience in civil rights law and because Mr. Montoya was defending Lujan in the criminal prosecution arising from the 2007 search. Rosenstein and Montoya also teamed up to represent Lujan in the civil case arising out of the 2007 search (*Lujan II*).

- In both *Lujan I* and *Lujan II*, Rosenstein and Montoya agreed to divy up the case responsibilities. Rosenstein was responsible for all client contact and for developing the facts of the case. Because Montoya was the purported expert in civil rights law, Montoya was responsible for all legal arguments. Montoya's staff also agreed to handle all clerical functions.

- Montoya and his staff were rarely responsive to Rosenstein's questions and requests. For example, Rosenstein requested that Montoya subpoena the Children, Youth and Family

5

      Services Department records for the minor daughters of Lujan in order to obtain information relevant to the unconstitutional detention claim. This was never done.

- Rosenstein reviewed both Judge Kelly's decision and the Tenth Circuit decision affirming Judge Kelly when they were issued. Rosenstein told Montoya that he needed to amend his complaint to add the names of the SWAT members who performed the strip searches of the minor children. This was never done.

- Finally, Rosenstein became very ill from January 2010 through April 2010. She was eventually diagnosed with Lyme disease. During that time, Rosenstein was bed-ridden and did very little work on the Lujan case.

Attorney Montoya choose not to cross-examine Rosenstein, nor did he elect to take the stand and testify himself. Following the hearing, Montoya submitted his own affidavit disputing several portions of Rosenstein's testimony (Doc. 72). Specifically, he stated that he was frequently available to Rosenstein and consulted with her on numerous occasions—either in person, by phone or through emails. He also asserted that Rosenstein "insisted on directing certain portions of the strategy and tactics of the case. For example, she insisted that an 'offensive' Motion for Summary Judgment by filed in this case on behalf of the minor children, and she undertook a substantial portion of the legal research and drafting in connection with said motion." Doc. 72, at 1-2. The Court assigns no credibility or weight to Montoya's affidavit (Doc. 72). Montoya had ample time prior to the August 18, 2010 hearing to submit his affidavit and he had the opportunity to cross-examine Rosenstein and to take the witness stand and testify on his own behalf. For Montoya to submit an affidavit after the August 18, 2010 hearing is nothing more than a lame attempt to contradict what is otherwise an unconverted factual record that is not the least bit favorable to Montoya.

Following the hearing, this Court dismissed the OSC with respect to Rosenstein and allowed her to withdraw from the case (Doc. 71). The Court based its decision primarily on the fact that Rosenstein was not responsible for the legal arguments in the case. Furthermore, neither party had presented the Court with any evidence that Rosenstein had participated in drafting either the Complaint or the Response to the Motion for Summary Judgment—the two documents on which the Court based its OSC.[3]

## FINDINGS OF FACT

After reviewing the pleadings filed by Montoya and Rosenstein in response to the OSC, and after considering the testimony of Rosenstein and the arguments presented at the hearing, the Court finds that Attorney Montoya violated his obligations under the New Mexico Rules of Professional Conduct by not diligently or competently representing his clients. The Court finds that Attorney Montoya violated Rule 16-101 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); and that Attorney Montoya violated Rule 16-103 ("A lawyer shall act with reasonable diligence and promptness in representing a client."). The New Mexico Rules of Professional Conduct have been incorporated in this Court's local rules and thus, Attorney Montoya violated the Court's local rules. *See* D.N.M. Local Rule 83.9 ("The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order."). Specifically, the Court finds that Montoya has failed to act in a legally competent manner in the following ways.

---

[3] Montoya asserts that Rosenstein undertook a substantial portion of the legal research and drafting of the Motion for Summary Judgment as to Minor Children (Doc. 35). This Motion played no role in the Court's OSC. In fact, the Court never considered this Motion because it granted the Defendants' Motion for Summary Judgment (Doc. 34) filed the same day.

<u>Failure to Name & Serve SWAT Officers</u>. In both *Lujan I* and *Lujan II*, Attorney Montoya named "approximately 8 unidentified members of the Bernalillo County Sheriff's Department SWAT team" as defendants in the Complaint. Despite having ample opportunity to discovery the identity of these defendants, Montoya never named or served them in either case. In fact, the undisputed evidence showed that defense counsel identified all the SWAT team members in a letter to Plaintiffs' counsel in August 2008—long before *Lujan II* was even filed.[4] In 2009, Judge Kelly dismissed these unidentified defendants due to Attorney Montoya's failure to name and serve them in *Lujan I*. *See Lujan I*, Doc. 47, at 11 ("Given that much of what Plaintiff objects to in this encounter occurred at the hands of the SWAT team, it is passing strange that no action was taken to add these persons. Despite ample time to name and serve them, Plaintiff has not, and dismissal is thus warranted."). A year later, I dismissed these defendants in *Lujan II*—again, due to Attorney Montoya's failure to name and serve them. Furthermore, Attorney Rosenstein stated under oath that she read Judge Kelly's opinion in *Lujan I* and immediately advised Montoya to name and serve the SWAT team members in *Lujan II*. Despite a clear ruling by Judge Kelly and the advice of his co-counsel, Montoya neglected to name or serve the SWAT team members.

Now, Montoya argues that the claims involving the SWAT officers challenged only Detective Madrano's allegedly unreasonable decision to deploy the SWAT team; he did *not* intend to challenge the actions of the SWAT officers themselves. *See* Response to Order to Show Cause, Doc. 57, at 9 ("[T]he decision to use SWAT itself represents an elevated level of force.").

---

[4] At the hearing on the OSC, defense counsel explained that the parties engaged in joint discovery for *Lujan I* and *Lujan II*. Therefore, defense counsel disclosed the identities of the SWAT team members who participated in the *Lujan II* search months before the complaint in *Lujan II* was even filed.

Therefore, Montoya claims there was no need to serve the SWAT officers. *Id.* at 6-7, 9-10. Despite Montoya's after-the-fact rationalization, there is absolutely no indication in the Complaint that Plaintiffs are challenging the decision to deploy the SWAT team. Rather, the claims focus on allegedly illegal actions by the SWAT team members themselves—such as the SWAT teams' wanton destruction of property and the unnecessary force used by the SWAT team. In fact, the Complaint does not even allege that Detective Medrano was responsible for deploying the SWAT team. Further, if Montoya had truly intended to challenge only Detective Medrano's decision to deploy the SWAT team, he could have stipulated to the dismissal of the SWAT team members. He did not do so. Accordingly, the Court finds that Montoya failed to competently represent his client when he failed to name and serve the SWAT team members.

<u>Naming Bernalillo County Sheriff's Department as Defendant</u>. In both *Lujan I* and *Lujan II*, Plaintiffs' counsel named the Bernalillo County Sheriff's Department as a Defendant. In both cases, the district court dismissed this Defendant because governmental sub-units are not properly suable entities in § 1983 actions. In his Response to the OSC, Montoya concedes that the Bernalillo County Sheriff's Department is not a proper defendant under § 1983, but argues that it is a proper defendant under the New Mexico Tort Claims Act. While Montoya may be correct, he neglected to raise this argument in response to Defendants' Motion for Summary Judgment—either in *Lujan I* or *Lujan II*. In fact, he did not address the propriety of the Bernalillo County Sheriff's Department *at all* in his response—apparently conceding that the Department was an improper party. Furthermore, the Complaint very clearly alleges a § 1983 claim of municipal liability based on an official custom or policy against the Bernalillo County Sheriff's Department. Complaint, at 15. For this reason, the Court finds that Montoya failed to competently represent his client when he named an improper party as a defendant, after being

9

explicitly instructed by Judge Kelly that the Bernalillo County Sheriff's Department was an improper party under § 1983.

<u>Failure to Properly Dispute Defendants' Facts</u>. In responding to and purportedly disputing Defendants' Statement of Facts in the Motion for Summary Judgment, Plaintiffs' counsel failed to properly cite to evidence in the record in both *Lujan I* and *Lujan II*. Accordingly, Defendants' facts were deemed undisputed in both cases. Montoya points out that his Response to the Motion for Summary Judgment contains frequent citations to the record. While somewhat true, those citations often do not stand for the proposition being cited. Even more frequently, Montoya deems a fact "disputed" but does not actually dispute anything. For example, the Defendants state that the search warrant authorized the police to search the residence, the person of Doris Lujan, and any cars at the residence. Doc. 34, at 4. Montoya marks this fact as "disputed" and proceeds to assert that the search warrant only authorized a search of the residence, the person of Doris Lujan, and any cars at the residence. Doc. 40, at 4. The Court is at a loss to understand why Montoya believes his evidence "disputes" the Defendants' facts. As another example, the Defendants assert that the police, who simultaneously executed a search warrant on Lujan's mother, found a quantity of crack cocaine in Lujan's mother's vagina. Doc. 34, at 9. Based on this discovery, Detective Medrano directed Detective Sabaugh to conduct a cavity search of Doris Lujan. *Id.* Montoya marks this fact as "disputed" and then asserts without citation: "There is no logical or legal justification for a cavity search of one suspect merely because a relative of that suspect was found to have secreted drugs in her vagina." Doc. 40, at 8. This is a legal argument about the reasonableness of the search; it is *not* a factual dispute over what occurred. Finally, Montoya added an entirely separate section to his response titled "Additional Undisputed Facts" for which he provided only

occasional citations to the record. Because Montoya failed to properly dispute any of the Defendants' facts, this Court deemed the Defendants' facts undisputed. Accordingly, this Court finds that Montoya failed to competently represent his client when he failed to properly dispute the Defendants' facts.

<u>Failure to Put Forth Evidence to Support Counts II and VI</u>. In both *Lujan I* and *Lujan II*, Plaintiffs' counsel failed to put forth *any* evidence supporting either Count II (failure to adequately supervise and care for the seized property) or Count VI (municipal liability). Because Montoya failed to put forth any evidence supporting these claims, the district court in *Lujan I* and *Lujan II* dismissed both counts. Now, Montoya argues that he *intentionally* abandoned these claims by failing to address them in his Response to the Defendants' Motion for Summary Judgment. If Montoya intended to abandon these claims, he should have affirmatively done so in his Response. By neglecting to address these claims at all, he forced the Court to address each of these Counts and assess whether sufficient evidence existed to support these claims. More fundamentally, the Court finds that Montoya is simply not credible in his assertion that he intentionally abandoned these claims. Montoya gave no indication that he was willfully abandoning these claims until his attorney filed his Response to the OSC. Accordingly, the Court finds that Montoya did not competently represent his clients when he failed to put forth any evidence in support Counts II and VI.

For the foregoing reasons, this Court believes that Attorney Montoya has failed to competently represent his clients to a serious degree. For all practical purposes, Judge Kelly gave Montoya a detailed road map in *Lujan I* for how to properly litigate *Lujan II*. As soon as Judge Kelly issued his decision in April of 2009, Montoya should have named and served the SWAT team members and dropped the Bernalillo County Sheriff's Department as a Defendant

(or, at least, clarified that he was only suing the Department pursuant the New Mexico Tort Claims Act rather than § 1983). Furthermore, when the Defendants filed their Motion for Summary Judgment, Montoya should have known exactly what evidence the Court needed to sustain his claims and provided the Court with such evidence. Montoya has provided no persuasive reason for these egregious legal errors and omissions. Such incompetence is even more frustrating when the Court considers the potential validity of the Plaintiffs' claims.

## SANCTIONS

Attorney Montoya is no stranger to court-imposed sanctions, as he has been sanctioned for his conduct as an attorney in multiple cases by various judges in the U.S. District Court for the District of New Mexico. *See Doe ex rel. Hughes v. Martinez*, 674 F. Supp. 2d 1282 (D.N.M. 2009) (Doc. 24); Memorandum Opinion and Order at 15-19, *Martinez*, No. 9-cv-104 (D.N.M. June 11, 2009) (Doc. 34) (detailing the history of the sanctions imposed on Montoya in this District). Considering that the previously imposed monetary sanctions did not seem to have any influence over the manner in which Mr. Montoya represented Plaintiffs in this case, I have decided not to impose any monetary sanctions against Mr. Montoya. Moreover, I previously denied Defendants' request for attorneys fees (Doc. 65) and I see no reason to resurrect this issue.

Given the gravity of Montoya's failure to adequately represent his clients as mandated by the New Mexico Rules of Professional Conduct and the Local Rules of this Court, a copy of this opinion will be forwarded to the Chief Judge of this Court. The District of New Mexico has "inherent supervisory power" over the conduct of attorneys appearing in its courtrooms, *United States v. Ryans*, 903 F.2d 731, 734 n.4 (10th Cir. 1990), and this power includes the ability "to control admission to its bar and to discipline attorneys who appear before it." *Chambers v.*

*NASCO, Inc*., 501 U.S. 32, 43 (1991). Additionally, a copy of this opinion will be forwarded to the Chief Counsel of the Disciplinary Board for the State Bar of New Mexico.

    **SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE